# No. 12-80106

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

**JACK JIMENEZ,**
*Plaintiff—Respondent,*

*v.*

**ALLSTATE INSURANCE COMPANY,**
*Defendant—Petitioner.*

PETITION FOR PERMISSION TO APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
THE HONORABLE JOHN A. KRONSTADT, DISTRICT JUDGE • CASE NO. 2:10-CV-08486-JAK-FFM

# RESPONDENT'S ANSWER IN OPPOSITION
# TO PETITIONER'S PETITION FOR
# PERMISSION TO APPEAL

**R. REX PARRIS LAW FIRM**
R. REX PARRIS, ESQ. (CA SBN 96567)
ALEXANDER R. WHEELER, ESQ. (CA SBN 239541)
KITTY SZETO, ESQ. (CA SBN 258136)
JOHN M. BICKFORD, ESQ. (CA SBN 280929)
43364 10TH STREET WEST
LANCASTER, CALIFORNIA 93534
TELEPHONE (661) 949-2595 • FACSIMILE (661) 949-7524

ATTORNEYS FOR PLAINTIFF—RESPONDENT
**JACK JIMENEZ**

# TABLE OF CONTENTS

**Page**

**INTRODUCTION**.........................................................................1

**STATEMENT OF FACTS** ..........................................................2

**STANDARD OF REVIEW** ........................................................2

**LEGAL ANALYSIS** ...................................................................5

    1.    ALLSTATE'S PETITION SHOULD BE STRICKEN
           BECAUSE IT IS AN EGREGIOUS VIOLATION
           OF THE LOCAL RULES..................................................5

    2.    THE DISTRICT COURT CORRECTLY HELD THAT
           ALLSTATE'S STATEWIDE POLICY-TO-VIOLATE-THE-POLICY
           IS THE "GLUE" HOLDING THE PUTATIVE
           CLASS MEMBERS' INDIVIDUAL CLAIMS TOGETHER. ......................7

    4.    THE DISTRICT COURT APPLIED THE RIGHT
           STANDARD FOR CLASS CERTIFICATION......................................19

**CONCLUSION** ........................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Mt. Clemens Pottery,*
328 U.S. 680 (1946) ................................................................. 15

*Armstrong v. Davis,*
275 F.3d 849 (9th Cir. 2001) .................................................... 4

*Brotherhood of Teamsters v. United States,*
431 U.S. 324 (1977) ................................................................. 13

*Chamberlan v. Ford Motor Co.,*
402 F.3d 952 (9th Cir. 2005) ......................................... passim

*Dilts v. Penske Logistics, LLC,*
267 F.R.D. 625 (S.D. Cal. 2010) .............................................. 18

*Dunbar v. Albertson's Inc.,*
141 Cal.App.4th 1422 (2006) ................................................... 18

*Duran v. U.S. Bank National Association,*
203 Cal.App.4th 212 (2012) .................................................... 17

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974) ................................................................. 10

*Goldsby v. Adecco, Inc.,* No. C-07-5604 MMC,
2009 WL 262216 (N.D. Cal. Feb. 4, 2009) ............................... 18

*Gonzales v. Free Speech Coal.,*
408 F.3d 613 (9th Cir. 2005) .................................................... 5

*Hart v. Parks,*
450 F.3d 1059 (9th Cir. 2006) .................................................. 6

# TABLE OF AUTHORITIES

**Page(s)**

*In re Chase Bank USA, N.A. "Check Loan" Contract Litig.*,
  274 F.R.D. 286 (N.D. Cal. 2011)................................................................8

*In re Delta Air Lines*,
  310 F.3d 953 (6th Cir. 2002) ....................................................................3

*In re Lorazepam & Clorazepate Antitrust Litig.*,
  289 F.3d 98 (D.C. Cir. 2002) ....................................................................3

*Johnson v. Gen. Mills, Inc.*,
  276 F.R.D. 519 (C.D. Cal. 2011)............................................................12

*Koike v. Starbucks Corp.*, No. C 06-3215 VRW,
  2008 WL 7796650 (N.D. Cal. June 20, 2008).......................................11

*Mahoney v. Farmers Ins. Exch.*, No. 4:09-cv-2327,
  2011 WL 4458513, *9 (S.D. Tex. Sept. 23, 2011) ........................8, 14, 15

*N/S Corp. v. Liberty Mut. Ins. Co.*,
  127 F.3d 1145 (9th Cir. 1997) ..................................................................6

*Prado-Steiman ex rel. Prado v. Bush*,
  221 F.3d 1266 (8th Cir. 2000) ..................................................................4

*Ross v. RBS Citizens, N.A.*,
  667 F.3d 900 (7th Cir. 2012) ................................................................8, 9

*Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*,
  262 F.3d 134 (2d Cir. 2001)......................................................................3

*United Steel v. Conocophillips*,
  593 F.3d 802 (9th Cir. 2010) ..................................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S.Ct. 2541 (2011) ..............................................................................7

## TABLE OF AUTHORITIES

**Page(s)**

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
    208 F.3d 288 (1st Cir. 2000).......................................................................3

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
    594 F.3d 1087 (9th Cir. 2010) ................................................................9

# INTRODUCTION

Petitioner Allstate Insurance Company ("Allstate") petitions for permission to appeal the district court's order granting Respondent Jack Jimenez's ("Jimenez") motion for class certification pursuant to Rule 23(f). Allstate argues that interlocutory appeal is warranted because of alleged "errors" made by the trial court, most of which focus on the commonality requirements of Rule 23(a)(2) and (b)(3). But there was nothing wrong with the district court's decision. The district court correctly applied the law to the facts and held that Allstate's policy-to-violate-the-policy was the "glue" holding the putative class members' claims together.

Additionally, the district court addressed Allstate's concern of asserting individual defenses by suggesting it would bifurcate the trial into a liability and a damages stage. The liability stage would focus on three classwide questions: (1) whether Allstate had a common policy not to follow its official overtime policy; (2) whether Allstate knew or should have known its claims adjusters were working off-the-clock; and (3) whether Allstate failed to take corrective steps to prevent off-the-clock work by claims adjusters. The damages stage would allow Allstate to present its individual defenses, such as the amount of off-the-clock hours

worked, the amount each claims adjuster may have been paid for overtime, and the extent to which off-the-clock work can be attributed to reasons other than Allstate's policies.

Therefore, there was no error made by the district court—let alone a "manifest error" required to grant a petition. Accordingly, this Court should deny Allstate's petition for permission to appeal.

## STATEMENT OF FACTS

In order to adequately respond to Allstate's petition for permission to appeal without violating Federal Rules of Appellate Procedure 5 and 32, Jimenez incorporates the factual findings made by the district court. *See* Order at 2–6. The district court's findings are a correct summary of the evidence submitted by both Allstate and Jimenez.

## STANDARD OF REVIEW

"Federal Rule of Civil Procedure 23(f) permits a discretionary interlocutory appeal from a district court order denying or granting a class action certification." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 955 (9th Cir. 2005) (per curiam). Such an appeal is intended "to be the exception rather than the rule." *Id.* at 959. This is "because they are 'disruptive, time-consuming, and expensive,' . . . add to the heavy

2

workload of the appellate courts, require consideration of issues that may become moot, and undermine the district court's ability to manage the class action." *Id.* (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 294 (1st Cir. 2000)). For these reasons, "Rule 23(f) review should be granted sparingly." *Id.*; *accord In re Delta Air Lines*, 310 F.3d 953, 959 (6th Cir. 2002) ("[T]he Rule 23(f) appeal is never to be routine."); *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 140 (2d Cir. 2001) ("[T]he standards of Rule 23(f) will rarely be met.").

In evaluating whether to permit an interlocutory appeal under Rule 23(f), this Court should seek to "avoid 'both micromanagement of complex class actions as they evolve in the district court and inhibition of the district court's willingness to revise the class certification for fear of triggering another round of appellate review.' " *Chamberlan*, 402 F.3d at 960 (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 105 (D.C. Cir. 2002)). Therefore, review will be most appropriate ***only*** where certification (1) presents a "death knell situation," (2) involves "an unsettled and fundamental issue of law relating to class actions," or (3) is undermined by a "manifest error" of law, none of which apply here. *Id.* at 959.

3

Here, Allstate does not argue under the "death knell" or "unsettled and fundamental issue of law" scenarios. Rather, all three of Allstate's arguments focus on alleged "errors" by the district court. *See* Pet. at 1–2. But error alone "will not suffice. *Any error must be truly 'manifest,' meaning easily ascertainable from the petition itself*." *Chamberlan*, 402 F.3d at 959 (emphasis added). "Manifest error" occurs only where certification is "***virtually certain*** to be reversed on appeal from the final judgment." *Id.* at 962 (emphasis added). An incorrect application of law to facts rarely rises to the level of manifest error. *Id.* at 959. Instead, a petitioner must show that "the district court applie[d] an incorrect Rule 23 standard or ignore[d] a directly controlling case." *Id.* at 962 (citing *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1275, n.9 (8th Cir. 2000)). Allstate has failed to show either.

Additionally, a district court's decision regarding class certification is reviewed for clear abuse of discretion. *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001). "Abuse of discretion is a highly deferential standard, under which the appellate court cannot substitute its view of what constitutes substantial justification for that of the district court; rather, the review is limited to assuring that the district court's

4

determination has a basis in reason." *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2005) (internal quotation marks omitted).

## LEGAL ANALYSIS

### 1. ALLSTATE'S PETITION SHOULD BE STRICKEN BECAUSE IT IS AN EGREGIOUS VIOLATION OF THE LOCAL RULES.

As a procedural matter, Allstate's petition for permission to appeal should be stricken because Allstate has clearly violated the Federal Rules of Appellate Procedure in order to gain an unfair advantage over Jimenez.

Federal Rule of Appellate Procedure 5(c) states that "[e]xcept by the court's permission, a paper must not exceed 20 pages" and "must conform to Rule 32(c)(2)." Rule 32(c)(2) requires all petitions to "be reproduced in the manner prescribed by Rule 32(a)." Rule 32(a) requires the text of a petition to be double-spaced and printed in at least 14-point typeface or larger.

Here, Allstate's petition is double-spaced and exactly 20-pages only because it used 12-point font in the body of its petition and 10-point font in its footnotes instead of using 14-point font. Allstate's petition would have been approximately six to seven pages over the 20-page limit had it correctly formatted its petition. Allstate used these extra pages to both

5

misrepresent the factual record[1] and bury this Court with alleged "errors" made by the district court. This violation has prejudiced Jimenez by giving him more to address in his answer than would have otherwise been the case. For this reason alone, this Court should strike Allstate's petition for permission to appeal. *See N/S Corp. v. Liberty Mut. Ins. Co.*, 127 F.3d 1145, 1146 (9th Cir. 1997) (striking an opening brief when "[the] appellant . . . approached [the local] rules with such insouciance that [this Court] c[ould not] overlook its heedlessness").

---

[1] Allstate's "Statement of Facts" more closely resembles an argument section than a factual statement, *see Hart v. Parks*, 450 F.3d 1059, 1059 n.1 (9th Cir. 2006) ("We remind counsel that the 'fact' section is for facts; argument should be reserved for the argument section of the brief. . . . The Federal Rules of Appellate Procedure's requirement of separate sections for fact and argument is mandatory, not suggestive."), and contains numerous misrepresentations to this court. Unfortunately, Jimenez does not have the pages to address each and every one of Allstate's misrepresentation; only the most egregious can be discussed here.

First, Allstate claims that "[d]espite the lack of any evidentiary support, the [district] court simply theorized that some managers subtly pressured adjusters not to report 'excessive' overtime so as not to exceed their budgets because 'there is likely a functional limit on overtime.'" Pet. at 3. But Jimenez offered substantial evidence to support the district court's conclusion. *See* Order at 6; *see also* SER 2, 17, 18. And second, Allstate claims that Jimenez did not "submit any evidence as to what information might be contained [in Allstate's computer, phone, and key card records]" or that such evidence even exists. Pet. at 4. Again, this is not true. Jimenez offered evidence that such records exist and what they might contain. *See* SER 3.

**2.** **THE DISTRICT COURT CORRECTLY HELD THAT ALLSTATE'S STATEWIDE POLICY-TO-VIOLATE-THE-POLICY IS THE "GLUE" HOLDING THE PUTATIVE CLASS MEMBERS' INDIVIDUAL CLAIMS TOGETHER.**

To certify a class, Rule 23(a)(2) requires "questions of law or fact common to the class." This requirement is satisfied by at least one common question "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). In other words, a court's inquiry focuses on whether a class action will generate common answers that are likely to drive the resolution of the lawsuit. *Id.* These questions and answers are the "glue" that holds the individualized class member's claims together. *See id.*

Here, Allstate claims that none of the common questions that the district court identified meet this standard. Pet. at 9. Specifically, Allstate attacks the common question identified by the district court of " '[w]hether [Allstate] had a common and widespread practice of not following its policies regarding overtime.' " *Id.* at 10. This argument, however, ignores Jimenez's theory of the case. As the district court correctly observed, Jimenez asserts "that [Allstate] has a common practice

7

of not following its official policy regarding overtime," Order at 10, and "has presented sufficient evidence to support [that] inference," *id.* at 11. "If [Jimenez] is correct . . . this practice could be a common source of putative class members' off-the-clock-work," *id.* at 10, and the "glue" holding their claims together, *id.* at 24. Put another way, Allstate's "unofficial policy is the common answer that potentially drives the resolution of this litigation." *Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 909 (7th Cir. 2012); *see, e.g., Mahoney v. Farmers Ins. Exch.*, No. 4:09-cv-2327, 2011 WL 4458513, *9 (S.D. Tex. Sept. 23, 2011).

Allstate further claims that an answer to this question "would not be dispositive of any element of liability" because it would "not determine which adjusters worked off-the-clock, or on which dates and in what amounts." Pet. at 10. However, these answers are relevant in determining damages, and although "the amount of damages incurred by any particular class member may differ," these differences do not defeat certification under the commonality prong, "even where individualized evidence may be necessary for purposes of a damages calculation." *In re Chase Bank USA, N.A. "Check Loan" Contract Litig.*, 274 F.R.D. 286, 291–92 (N.D. Cal. 2011); *accord Yokoyama v. Midland Nat'l Life Ins. Co.*, 594

8

F.3d 1087, 1094 (9th Cir. 2010) ("In this circuit, however, damage calculations alone cannot defeat certification.").

In any event, the district court effectively rejected Allstate's argument below. Relying on *Ross,* 667 F.3d at 908–10, the district court held:

> Here, [Jimenez] allege[s] a company-wide policy of discouraging and limiting overtime. In *Ross,* the Seventh Circuit distinguished *Dukes* . . . . With respect to the type of proof, the court observed that, although individual issues would be present, the type of proof necessary in *Dukes* concerning how individual managers exercised their discretion was not necessary to Plaintiff's claims; instead, only some lesser amount of discretion was at issue, *i.e.,* the discretion associated with the details of enacting a company-wide policy or directive. ***Thus, there was "glue holding together" the proposed class: "the common question of whether an unlawful overtime policy prevented employees from collecting lawfully earned overtime compensation.***" [Jimenez's] claims in this action are similar to those advanced by the plaintiffs in *Ross.* Thus [Jimenez's] overtime claim is based on a common state-wide "policy to violate the policy." For this reason, [Jimenez] has demonstrated that there are significant common questions at issue and that they will predominate over any individualized inquiries.

Order at 24 (emphasis added) (citations omitted).

Next, Allstate claims that the common question of " 'whether Defendant knew or should have known that claims adjusters were working off-the-clock without compensation' " is not amenable to class proof because there are "contrary explanations in the record." Pet. at 10.

9

But these "contrary explanations" go to the merits of Jimenez's case and, " '[i]n determining the propriety of a class action, the question is not whether the plaintiff . . . will prevail on the merits, but rather whether the requirements of Rule 23 are met.' " *United Steel v. Conocophillips*, 593 F.3d 802, 808 (9th Cir. 2010) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)).

Accordingly, the district court clearly held that—based on the evidence presented—the inquiry of whether Allstate knew or should have known of off-the-clock work was amenable to class wide adjudication. *See* Order at 13.

Finally, Allstate claims that—like the plaintiffs in *Brinker*—Jimenez has "failed to identify any policy that uniformly caused all adjusters to work uncompensated overtime." Pet. at 11. The evidentiary showing in *Brinker*, however, is dramatically different than the evidentiary showing here. In *Brinker*, the court held that the plaintiffs' "anecdotal evidence" failed to "present[ ] substantial evidence of a systematic company policy to pressure or require employees to work off the clock, a distinction that differentiate[d] [it] from those [the plaintiffs] relie[d] upon." 139 Cal.Rptr.3d at 352. Unlike the plaintiffs in *Brinker*,

10

Jimenez presented **substantial** evidence of Allstate's "policy-to-violate-the-policy," which the district court discussed in determining whether or not to certify the class. *See* Order at 11–12.

Allstate's reliance on *Koike v. Starbucks Corp.*, No. C 06-3215 VRW, 2008 WL 7796650 (N.D. Cal. June 20, 2008) fares no better. There, "[t]he district court . . . found that the putative class representative had hidden his off-the-clock work from other employees and management, and had intentionally and consistently conducted such work in secret, despite having the ability to record his own time." Order at 23 (citing *Koike*, 2008 WL 7796650 at *2–*4). The district court here, however, noted that— unlike the plaintiff in *Koike*—Jimenez offered evidence that Allstate was *aware* that employees were working off-the-clock:

> [A]lthough there is some evidence that a portion of class members' off-the-clock work may have been done without disclosure to those who supervised the claims adjusters, there is also testimony that managers regularly saw employees work in excess of eight hours in a day and 40 hours per week without taking any action. Indeed, there is evidence in this case that the managers knew whether those employees were being compensated for such overtime because all overtime requests had to be submitted through upper-level management.

*Id.* In addition, unlike the plaintiffs in *Koike*, Jimenez presented substantial evidence that claims adjusters could not record their own time

11

since management was solely in control of approving and inputting overtime work. *See id.* at 5–6.

In sum, none of the "errors" Allstate has alleged are errors at all. The district court considered the evidence, applied the applicable law, and correctly held that Jimenez "presented sufficient evidence to demonstrate affirmatively that [there are] common questions . . . present in this action." Order at 13. Allstate has therefore not even come close to meeting the "virtually certain" standard set forth in *Chamberlan* and has utterly failed to establish any alleged "errors."

**3.    STATISTICAL SAMPLING HAS NOT AND WILL NOT VIOLATE ALLSTATE'S RIGHT TO DUE PROCESS BECAUSE ALLSTATE WILL STILL BE ABLE TO ASSERT ITS INDIVIDUAL DEFENSES AT BOTH THE LIABILITY AND DAMAGES STAGES OF THE TRIAL.**

Allstate claims that the district court "erred" by holding that "[Jimenez] could use statistical sampling to attempt to prove class-wide liability," Pet. at 12, because *Dukes* held that such an approach would "deprive [it] of [its] due process right to present individualized defenses to individual claims," *id.* at 14. Allstate, however, "misinterprets both the facts and holding of [*Dukes*] and the results of [the district court's] certification order." *Johnson v. Gen. Mills, Inc.*, 276 F.R.D. 519, 523 (C.D. Cal. 2011).

12

In *Dukes*, the United States Supreme Court disapproved of a Title VII case's trial management plan that denied the employer the ability "to litigate its statutory defenses to individual claims." 131 S.Ct. at 2561. The Court began by describing the well-established procedure for trying a Title VII case:

> [A]fter [a plaintiff has] establish[ed] a pattern or practice of discrimination, 'a district court must usually conduct additional proceedings . . . to determine the scope of individual relief.' At this phase, the burden of proof . . . shift[s] to the company, but it will have the right to raise any individual affirmative defenses it may have and to 'demonstrate that the individual applicant was denied an employment opportunity for lawful reasons.' "

*Id.* (third alteration in original) (citations omitted) (quoting *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 361, 362 (1977)).

The Supreme Court criticized the district court for replacing this procedure with what it called a "Trial by Formula," and since this approach did not allow the employer to "litigate its statutory defenses to individual claims" the Court held the plan invalid. *Id.*

13

The district court's certification order here is entirely consistent with *Dukes*. The court, relying on *Mahoney*—a post-*Dukes* case[2]—held that statistical sampling could be used to prove Allstate's liability—at least to the extent Allstate knew or should have known that its claims adjusters were working off-the-clock as a result of its policy-to-violate-the-policy. *See* Order at 17–19.

*Mahoney*—a "factually similar collective action"—considered "whether [an] insurance company could present its individual defenses in conjunction with [the plaintiff's] representative testimony." *Id.* at 17. There, the defendant "argue[d] that decertification [was] necessary because of the highly individualized nature of its defenses, which include each plaintiff's knowledge of [defendant's] policies, whether each plaintiff was paid for overtime work, whether plaintiffs' off-the-clock activities were compensable work, whether some of the off-the-clock work was de minimis, whether [defendant] had actual or constructive knowledge of any off-the-clock work performed by the plaintiffs, whether [defendant] acted in good faith, and whether the plaintiffs' claims are time-barred."

---

[2] Thus, Allstate's claim that the district court "rel[ied] solely on pre-*Dukes* decisions" is either an intentional misrepresentation to this Court or a glaring oversight on its part. Pet. at 14.

*Mahoney*, 2011 WL 4458513 at *10. The court, however, held that "these defenses [could] be adequately raised at a trial involving representative testimony" and noted that courts have long "allowed the use of representative testimony" in such cases. *Id.* (citing cases)

Here, the district court held that Jimenez's approach is "similar" to that of *Mahoney*'s and that "back pay may be awarded to non-testifying claimants on the basis of evidence adduced from a fairly representational subset." Order at 18. It also noted that its holding is consistent with the Supreme Court decision in *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680 (1946), "which allowed proof of overtime hours 'as a matter of just and reasonable inference,' a standard which may be met in the context of a group action by establishing a 'pattern or practice' of overtime work by class members." Order at 18 (quoting *Anderson*, 328 U.S. at 687–88).

Even more, the district court recognized that statistical sampling might not be appropriate in determining damages. *See id.* at 18–19. Relying on *Dukes*, it reserved the issue for a later date and suggested that it might bifurcate the trial into a liability stage and a damages stage. *Id.* at 18. " 'If liability is proven, the amount of off-the-clock hours, the amount each plaintiff may have been paid for overtime work, and the

15

extent to which off-the-clock work can be attributed to reasons other than [Allstate's] policies can be evaluated at damages phase of trial.'" *Id.*[3]

Allstate's frequent lament that this procedure would violate its due process rights because it will deprive it of the ability to show that a particular adjuster never worked off-the-clock simply isn't true. *See* Pet. at 15–16. The district court expressly stated that it was only certifying the class as to Allstate's liability of whether or not Allstate knew or should have known that its claims adjusters were working off-the-clock as a result of its policy-to-violate-the-policy. *See* Order at 17–19. The district court did not preclude Allstate from presenting evidence at the damages portion of the trial that a certain claims adjuster never worked off-the-clock. In fact, the district court stated that Allstate could do just that. *See id.* at 18. (noting that Allstate's "'concern over the extent to which each plaintiff may have been paid for overtime hours can be resolved through bifurcation of the trial into a liability stage and a damages stage'" (internal quotation marks omitted)). Simply put, the inquiries involved in

---

[3]     Contrary to Allstate's representation that the district court "denied" certification of the damages phase of Jimenez's case, Pet. at 7, the district court actually "reserved" the issue for a later date, Order at 18.

off-the-clock cases are fewer in number and different in type than those at issue in *Dukes* and the misclassification cases relied on by Allstate.

Allstate's reliance on *Duran v. U.S. Bank National Association*, 203 Cal.App.4th 212 (2012) is misplaced for two reasons. First, *Duran* was a *misclassification* case, *not* an off-the-clock case. The number of inquiries in determining whether an employee has been misclassified far exceeds the relatively straightforward determination of whether an employee worked off-the-clock. *See id.* at 219 n.14. And, contrary to Allstate's contentions, *Duran* expressly states that it "do[es] not disagree with the proposition that statistical sampling is a tool that may be used in appropriate cases."[4] *Id.* at 265.

Second, *Duran* occurred *after* the court had developed a trial plan and *after* the bench trial had taken place—facts it used to distinguish itself from courts that had considered the appropriateness of statistical sampling *at the certification stage*. *See id.* Similarly, it is impossible to determine whether Allstate's due process rights will be violated at this

---

[4]   Allstate claims that *Duran* "recently concluded that *Dukes* makes clear [that] trial by representative sample to prove liability is improper," Pet. at 15, is therefore a blatant misrepresentation to this Court.

17

stage of the litigation since the merits of Allstate's defenses are yet to be adjudicated.

Allstate also claims that "class certification should have been denied for the additional reason that [Jimenez] failed to explain how he would use statistical sampling to prove liability." Pet. at 16. According to Allstate, Jimenez should have proffered the *exact* survey Dr. Krosnick will use to help prove Allstate's liability. *See id.* at 17. But the district court has not yet developed or approved of a particular trial plan, and at this stage in the proceedings, "the exact details of [Jimenez's] plan are unnecessary to determine whether common issues predominate." *Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 638 (S.D. Cal. 2010). Contrary to Allstate's suggestion, all that is required is a demonstration that statistical sampling " 'will effectively manage the issues in question.' " *Goldsby v. Adecco, Inc.*, No. C-07-5604 MMC, 2009 WL 262216, at *4 (N.D. Cal. Feb. 4, 2009) (quoting *Dunbar v. Albertson's Inc.*, 141 Cal.App.4th 1422, 1432 (2006)). The district court held that a survey created by Dr. Krosnick could satisfy this requirement. *See* Order at 16.

For these reasons, Allstate has failed to show that the use of statistical sampling to prove classwide liability is "virtually certain" to violate its right to due process. *Chamberlan*, 402 F.3d at 963.

## 4. THE DISTRICT COURT APPLIED THE RIGHT STANDARD FOR CLASS CERTIFICATION.

Finally, Allstate claims that the district court incorrectly applied a "could have known" standard instead of a "knew or should have known standard." Pet. at 18. Specifically, it claims that the district court "found common questions as to Allstate's knowledge because it believed Allstate could have obtained phone and computer login data and building entry data from its vendors, compared those records against adjusters' time records, and identified where adjusters might have worked more than is recorded on their rime records." *Id.* at 18–19. This argument is both a clear misstatement of the record *and* the district court's order. The district court clearly held "[t]here are also common questions pertaining to what Defendant knew or should have known," such as "whether knowledge can be imputed to [Allstate] in light of its access to [these records]." Order at 12 (emphasis added). The answer to this question will "potentially drive the resolution of the litigation." *Dukes*, 131 S.Ct. at 2551.

19

Allstate also claims that "[Jimenez] submitted no evidence that any such records exist or for what length of time, that Allstate ever obtained this data, or that managers had access to it." Pet. at 19. This is a simply untrue. Jimenez proffered a substantial amount of evidence to support the existence and availability of this data. *See* SER 3.

Accordingly, the district court did not apply an incorrect legal standard to the knowledge element at class certification.

## CONCLUSION

Because Allstate has failed to identify ***any*** error made by the district court—let alone a "manifest error"—this Court should strike, or in the alternative, deny Allstate's petition for permission to appeal for the reasons stated above.

May 14, 2012

By:           */s/ Alexander R. Wheeler*
             Alexander R. Wheeler

**R. REX PARRIS LAW FIRM**
R. Rex Parris, Esq. (CA SBN 96567)
Alexander R. Wheeler, Esq. (CA SBN 239541)
Kitty Szeto, Esq. (CA SBN 258136)
John M. Bickford, Esq. (CA SBN 280929)

Attorneys for Plaintiff—Respondent
**Jack Jimenez**

20

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 43364 10th Street West, Suite 109, Lancaster, California 93534. On May 14, 2012, I served the within document(s) described as:

## RESPONDENT'S ANSWER IN OPPOSITION TO PETITIONER'S PETITION FOR PERMISSION TO APPEAL

on the interested parties in this action as stated below:

### *** Please See Attached List ***

X (BY MAIL) By placing a true copy of the foregoing document(s) in a sealed envelope addressed as set forth above. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U. S. postal service on that same day with postage thereon fully prepaid at Lancaster, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

(BY FAX) By transmitting a true copy of the foregoing document(s) via facsimile transmission from this firm's facsimile machine, to each interested party at the facsimile machine number(s) set forth above. Said transmission(s) were completed on the aforesaid date at the time stated on the transmission record issued by this firm's sending facsimile machine. Each such transmission was reported as complete and without error and a transmission report was properly issued by this firm's sending facsimile machine for each interested party served. A true copy of each transmission report is attached to the office copy of this proof of service and will be proved upon request.

I declare that I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 14, 2012, at Lancaster, California.



_____   */s/ Vicky L. James*        .   _____
Vicky L. James

## <u>ATTACHMENT TO PROOF OF SERVICE</u>

JIMENEZ, JACK, et al. v. ALLSTATE INSURANCE COMPANY, et al.
<u>USDC, CENTRAL DISTRICT CASE NO. CIV10-08486 JAK (FFMx)</u>
<u>NINTH CIRCUIT COURT OF APPEAL CASE NO. 12-80106</u>

Andrew M. Paley, Esq.                          /Attorneys for Allstate Insurance
Sheryl L. Skibbe, Esq.                          Company
Eileen C. Zorc, Esq.
Julia Brodsky, Esq.
**SEYFARTH SHAW LLP**
2029 Century Park East, Suite 3500
Los Angeles, CA 90067-3021
Telephone:  (310) 277-7200
Facsimile:  (310) 201-5219